Good morning. May it please the Court, Matthew Taggart and Ryan Andrews for Petitioner Ann Tran. I will be addressing the exhaustion and waiver issue briefly, and my colleague, Mr. Andrews, will be addressing the prejudice and Padilla issues. The order... Do you want me to stop you when you're halfway through to give the time to your co-counsel? Thank you very much, Judge Reinhardt. I'll just keep a close watch on the clock. I appreciate that. With respect to the... Then I take it as a no. But a very polite question. Either way, I would appreciate it. With respect to the exhaustion issue, this Court... This case is interesting insofar as this Court already appears to have held a number of cases, including a case that I argued in 2009 called the Med v. Holder, where the Board of Immigration Appeals specifically addresses an issue and its opinion. That issue is deemed to be exhausted. The Board of Immigration... The basis for the Board's dismissal of Ms. Tran's appeal simply stated was that she failed to raise... She failed to raise the... Or failed to establish that there was a knowing and... Fail in the underlying proceeding before the immigration judge. And aside from the logic or illogic of that idea, and that she... Whether she would know or not, or have reason to know if she, of course, did not waive it as a pro se petitioner, the Board exhausted the issue. Was she a pro se petitioner? She... At the time of the filing of the Form 26, I believe she was Judge Clifton. She was represented by Olga Nasimova, as you see in the September 29, 2010 transcript, at the hearing. That's when she's supposed to have said, agreed that she's giving up her right to appeal. Well, in fact, there was a discussion, there was a colloquy as set forth in our brief on the issue of waiver. The question is whether it was considered an intelligent in light of this court's prior precedence. But the Board of Immigration Appeals decision says she failed to basically plead around the waiver in her Form 26 notice of appeal, the written notice, which as we argued in our brief, frankly, makes no sense. The basis for the Board's order was they concluded that she waived at the hearing. So the issue for... The time of the waiver wasn't when she filed the Form 26, it was at the hearing when she was represented. I mean, that's what triggered my question, because I thought you were saying at the time of the waiver she was unrepresented. The waiver took place at the IJ hearing. She had a lawyer standing next to her and the lawyer agreed. Well, maybe it did and maybe it didn't, Judge Clifton. Well, you can argue that, but I think that's the source of the waiver argument, isn't it? The Board isn't saying she waived by filing a Form 26. Well, there's two separate issues. There's the exhaustion argument, which is the basis for the Board's decision. The government takes the position... Well, exhaustion is different from waiver. Correct. The government's position is that this issue is not properly before the court under 1252 because she failed to exhaust. That issue seems... That position seems clearly to be wrong and at odds with prior precedence and I'm not even sure I appreciate how this case is different from those prior precedence that held. I jumped over exhaustion to talk about waiver. You're talking about exhaustion, but I take it we'll get some answer to waiver. In the next 15 seconds, Judge Clifton, we will. Because that seems to me to be a harder one. She says in response to the IJ's specific statement, yes, and her counsel standing next to her says that she was on board. Correct. There is a colloquy, the word waiver was used, whether it is knowing and intelligent is the issue. I thought the word waiver is used. You're giving up your right to appeal. Do you understand that? Answer yes, your honor. And then the question and answer to the counsel. I mean, what's not to understand about that? The Board of Immigration, if you look at the Board's decision, it was based on the exhaustion issue, not an analysis of knowing and intelligent waiver. It was essentially that she failed to exhaust because it was not clear in her EOIR 26. As to the issue of waiver on merits, there are a couple things that bear note. The government bears the burden of showing the waiver, as I understand it, in light of as set forth in United States v. Ramos and noted in our brief. There is a presumption against waiver because we're talking about fundamental rights here. I'm speeding up. For a counseled person? That's the difficulty in this case and that's the distinction from Ramos. Judge Clifton, as you've noticed, it is a fact-specific inquiry. We've argued in our papers and in the opening brief and I believe in the reply brief as well that because of the language difficulties and the colloquy itself, it was a statement by the judge that she appeared not to understand and I would encourage your honors in my final comment to go back. This is the persecution-prosecution question or that she failed to understand? Correct, Judge Dorsey, among others. It comes across in the transcript that she did not understand what's going on. Her counsel, she was represented by counsel, but she just demurred and said, yeah, okay, whatever, words to that effect. I'm going to pass it on to Mr. Andrews, if I may. Thank you. Good morning, your honors. Ryan Andrews for the petitioner. The government argues that even if my client didn't waive her right to appeal, she still must lose because she can't show that there'd be anything different that could have happened, that she can't show any prejudice. But the prejudice as we've identified here is that our client claims the plea that forms the sole basis for removal from the country is tainted, is tainted by the fact that she wasn't advised or received bad advice about the immigration consequences of entering into that plea. Now, recognizing that we can't collaterally attack that plea in this forum, we don't argue that bit, all that she seeks below is a brief period of time to allow herself. What effort has she made in the past three or four years to withdraw her guilty plea or do something about the criminal proceeding? She hasn't taken steps. Number one, she has no money. So why should we give her more time? She's had three or four years to do something. Yes. But she's in a very different position if she wins today versus if she loses today. Because if she spends every dime that she's saved up over the past few years on criminal counsel to try to unwind her plea at this point, and then loses this appeal, then even if she takes away the sole reason why she's removable from the country, the BIA would      Number four, she hasn't taken steps. Number five, she hasn't taken steps. Number six, she hasn't taken steps. out of the country, never able to see her children again, despite spending all of her savings trying to unwind her guilty plea. By contrast, if she wins today and the BIA does hear her story, which is a sad story, and grant her a brief amount of time to pursue this avenue, and then she does unwind her guilty plea, then it must allow her to stay in the country. And it's a big, big difference. Why would it must allow? If she takes... You're presuming the BIA is going to make a hypothetical decision because you're asking the BIA to make a decision before she, in fact, does unwind her criminal plea. And that doesn't happen very often, and I don't see the BIA doing hypothetical decisions very often. Plano, you're... I get the connection. I've been wondering what it was, and there's a connection in terms of potential financial benefit to her not to expend money that's futile. But you're asking us to take on a hypothetical, that is, that she might succeed in that effort against the criminal plea, which doesn't seem all that plausible to me. To a certain extent, yes. But to another, no. Because all she has to show for prejudice is there is some plausible way that she can obtain a different result below. And it is entirely plausible that the BIA would hear her story, allow her a continuance, and that she could unwind this guilty plea. She has a very clear argument that she made. Let's go to the unwinding the guilty plea part. In light of the passage of time and the very high standard for unwinding a guilty plea post-sentencing, why would we presume in any way that your client would succeed if she were able to get through all of those other hurdles and actually get back to the criminal court, or the district court, and unwind the guilty plea? Well, time shouldn't be an issue. For one thing, she's likely still in custody because she's under probation still. She could probably file a habeas petition, or even if not, a writ of coram nobis. She's not back in Canada now? She is in Canada right now. She's out of the country. And she's on probation from a court order in this country? Yeah, the probation extended for five years, from 2009. So she would have two avenues. One would be a writ of coram nobis, even if she's not considered in custody. She still has a route to attack it, whether or not she is. Another way would be a habeas petition. But that's all that you have to decide, is that she has a plausible chance to be able to do that in this other proceeding. And I want to also briefly address the Chydez decision that just came down. The briefing in this case, we relied on the Padilla v. Kentucky 2010 decision. The government argues in its supplemental brief that Chydez completely forecloses our prejudice argument. But it doesn't. In the Ninth Circuit, unlike in the majority of circuits, the Ninth Circuit previously recognized that bad advice about the immigration consequences of entering into a criminal guilty plea can form the basis for an ineffective assistance that counsel came. And that's the Kwan case and its progeny that we cited here. So our argument is essentially the same, despite Chydez. Good morning, Your Honors. May it please the Court. Jonathan Robbins here on behalf of the Respondent, Eric Holder. With respect to the exhaustion argument, my colleague here mentioned that this Court has case law which talks about when the Board can revive an issue that hasn't actually been raised to it. The problem with that specific argument in this case is that the Board didn't revive the issue. Let me explain exactly what I mean. Now, there's no dispute that... Could you speak up a bit? Oh, yes. I'm sorry. Is that better? Just a little louder will help. Sure. Is this better? Don't worry about the microphones. Just speak. Okay. Now, there's no dispute that Petitioner in this case did not raise the issue of waiver to the Board. The argument that they made to the Board was that the Board erred in finding that she was an aggravated felon and removable on that basis. Now, when the Board talked about Waverand's decision, it didn't find that...     We're going to review it. We're going to review it. We're going to review it. We're going to review it. Oh, her waiver was knowing and intelligent. What it did is it said she didn't raise the issue. There's a distinction there. So the case law with regard to reviving these issues by the Board doesn't apply here, because the Board didn't make a finding on waiver. All it did was preserve the issues to say that she didn't raise it. So... Answering conundrum, because if the law were as you are concerned about it becoming, the        We're going to review it. Oh, I'm sorry. I'm sorry. I didn't understand your question. issue, or dispose of an appeal to the Board on exhaustion, because by saying there's been a failure to exhaust, it would arguably have revived the underlying issue. That's exactly the problem. So it's important to understand there. Now, I agree with counsel that if the Board had said something that this waiver was knowing and intelligent and said that out of the blue, that would revive the issue, and then the exhaustion wouldn't be required.       the Board didn't make a finding on waiver. All it did was preserve the issues to say that she didn't raise it. I understand my colleagues are in the unenviable position of having the Supreme Court foreclose one of their main arguments during these proceedings. We're familiar with being in that position, having the Supreme Court speak in a way that... Yeah. But Chávez does foreclose their main argument. Chávez holds that... What about the earlier Ninth Circuit precedent that they cite? Well, there's a couple of problems with this argument.       and intelligent and said that out of the blue, that would revive the issue. should be able to retroactively apply PADIA, and everywhere else under Supreme Court precedent, they shouldn't. I don't think that's what the Supreme Court had in mind when it held that PADA is not retroactive. And I take it the argument to be, well, the Ninth Circuit foresaw a PADIA-like decision, and that case, and so the case that's cited is the case that, or establishes the date that it was approved by the Supreme Court. That petition, I argue, should be used as the effective date for that doctrine within the Ninth Circuit, because it was the doctrine within the Ninth Circuit. Well, I think there's problems with that on a couple of levels. First of all, inside is when the Court is talking about whether or not PADIA should be applied retroactively, they talk about establishing a new rule, and the new rule that they're talking about is the Supreme Court's rule in PADIA, not other separate dates in every different circuit that may have held it at one point or another. When they talk about establishing the new rule and determining why a PADIA is not retroactively applied, I think that's what they're talking about. I don't think the Supreme Court intended for every different region of the United States to apply PADIA retroactively in some circumstances, or in some circumstances not apply it retroactively at all. I think, I don't think that's really valid. Essentially, the argument is. Well, what about somebody within the circuit, and I've already forgotten the name of the case and didn't write it down, but the person who prevailed on a similar argument in the Ninth Circuit prior to the date of PADIA, does that person subsequently lose because the Supreme Court hadn't reached that conclusion itself until a later date? I just want to clarify your question. I'm not exactly sure you're asking. I'm not surprised it needs clarification. I'm kind of waking up. Let's call it Smith. I've forgotten the name of the precedent. Smith wins in the Ninth Circuit. Prior to PADIA. Prior to PADIA.  Does he wind up losing subsequently, even though it turns out the Supreme Court said the Ninth Circuit had it right, simply because the Supreme Court hadn't spoken until PADIA? Well. I mean, he doesn't lose. Why should anybody else lose at that time period? Well, first of all, Kwan is. Kwan, that was it. Thank you. Oh, yeah. Well, Kwan came out in 2005. Now, Petitioner was convicted in 2008. If they had wanted to raise this argument regarding ineffective assistance of counsel, which is essentially a PADIA claim. You may cloak it under a previous Supreme Court case, but that's essentially what it is. They could have raised it at any point during proceedings. They could have raised it to the immigration judge. They could have raised it to the board. They're raising it here for the first time. She's got better lawyers now than she had before. That's undoubtedly true. No question about that. We'll stipulate to that. Actually, I'm not so sure. Not that these aren't excellent lawyers, but her lawyers in the proceedings during immigration court got what she intended. In the record at immigration proceedings, they made very clear what their intentions were. Their intentions were to avoid being removed to Canada, and they wanted to get this over as quickly as possible. And that's exactly what they got. They didn't make any mention that they didn't want to. Well, the Canada part didn't work out that well. That's where she is now, I understand. It didn't work out well, but at the time, that was the strategic decision that they made. And, again, Your Honor has spoken to it. It's very clear on the record. The immigration judge checked with both petitioner and petitioner's counsel at proceedings below to specifically say, are you sure this is, you know, are you satisfied that this is a knowing and intelligent waiver? The attorney said yes. They also talked about it with, you know, the immigration judge did what they wanted. They wanted a removal order to Vietnam with an alternative removal order to Canada. That's what they got. So now, you know, and part of the problems with the exhaustion in the jurisdiction, jurisdictional problems in this case, is the fact that at every stage of proceeding, they claim something different. At the immigration judge, they said, we want a waiver appeal. We want a removal order to Canada, alternative order removal to Vietnam. Before the board, completely abandoned that, ignored the fact that they'd waived, that she'd waived appeal, and said, I'm not actually an aggravated felon. Now here before this court, there's brand new arguments, arguing Padilla, claiming that, oh, you know, it's sort of this implied ineffective assistance of counsel at proceedings below, without having exhausted the issue before the board, without having exhausted the issue before the immigration judge. You know, there are vehicles in place to pursue those specific forms of relief. They could have filed a motion to reopen that complied with the Lozada requirements before the board. They didn't do that. They still haven't done it to date. You know, this collateral attack on the criminal conviction, to date, they still haven't filed anything, or at least not in this record, they haven't filed any challenge to the criminal conviction. You know, I know my colleagues have spoken that, you know, she's trying to save money, but, you know, it's now, you know, she was convicted in 2008. How many years do we have to wait before she decides to challenge this criminal conviction, which is now the third basis for the challenge to this removal order? So, you know, so I mean, with respect to, you know, this case really, I know there's a lot of angles to it, a lot of complications, but it really, really does come down to very simple exhaustion. This is something that they made a knowing and intelligent waiver at the proceedings below. It didn't exhaust it to the board. Everything that's being raised in these briefs here is being raised for the first time,  You argue in a footnote, you argue in a footnote that if we find that we have jurisdiction to consider the issue, that we should remand the knowing and intelligent waiver question to the immigration court to do the fact finding on the knowing and intelligent nature of the waiver. What particular expertise in immigration law is necessary to make that determination that we wouldn't be able to make here? Well, specifically, the argument that they're making in their brief is that it's not a knowing and intelligent waiver because she didn't know the implications of the immigration consequences of what her waiver would do. She didn't know that she would still be removable. So there are immigration aspects to whether or not the waiver was knowing and intelligent that the board should have an opportunity to address in the first instance. Again, the Supreme Court has said that the board should have an opportunity to address this. And that also goes with just a matter of prudential exhaustion. Maybe the board will see something that they'll raise in their motion to reopen that, you know, there's an infinite number of things that could be raised in a motion to reopen that the board should have an opportunity. If it's just for that sole question, even that sole question does implicate in some circumstances or could theoretically implicate immigration consequences for a waiver. So, for example, I know that there's a case law in this court in which the court has found that there are not knowing or intelligent waivers where they've said, well, the board or immigration judge didn't specifically explain this aspect of immigration law to the alien. So that is something that would have specific immigration law or expertise that would be appropriate for the board to look at. Aren't those typically unrepresented counsel cases at the deportation proceedings? I believe so. Off the top of my head, I can't think of one where they're represented. But, again, that doesn't really help them in this case because, again, they were represented at the immigration judge proceedings when they made the waiver. But I think as just maybe even as a matter of prudential exhaustion, just to send it back so that the board can have an opportunity to look at it in the first instance. Again, the board hasn't done anything wrong here. The government hasn't erred. Their decision isn't in any error. All the errors that they're claiming are self-induced by failure to raise it or because she hired the wrong attorney or what have you. So the government shouldn't be penalized by not having an opportunity to look at it in the first instance. I see I'm almost out of time. Are there any specific questions with respect to either the jurisdictional exhaustion, anything, any angle that you'd like to look at? Okay. Well, then, thank you very much for your time, Your Honors. Appreciate it. Thank you, counsel. We'll give you a minute for rebuttal, if you want. Your Honor, very briefly on the exhaustion and waiver points before going to Chaydez. The board did address the issue, and there's no way that our client could have known to raise the issue of a knowing and intelligent waiver of a right to appeal if she didn't know that she waived a right to appeal. It makes no sense. She wouldn't be able to know to raise it if the point is that she's saying she didn't know about it. On Chaydez, though, the reason why Padilla announced a new rule is that most circuits, not this circuit, but most circuits categorically removed advice about the immigration consequences, about collateral effects of a criminal plea from the scope of Sixth Amendment ineffective assistance of counsel. And in Chaydez, they specifically recognized that there are some circuits that kind of did, but the brunt of the circuits didn't. So it was a new rule. But that doesn't change the fact that here in the Ninth Circuit, there was case law prior to that that recognized that collateral effects of a criminal plea can form the basis of an ineffective assistance of counsel claim, that it comes within the Strickland analysis. The Strickland analysis applies to that scenario. And, in fact, this Court recently, and although it's an unpublished decision, just this past December, on the basis of Kwan, held that someone did receive ineffective assistance of counsel on facts very similar, where they just, the person got advice that someone may, but might not be removed from the country based on the fact that she was pleading guilty to an aggravated felony. But, in fact, she must. And it's not too similar from right here, when, in fact, the attorney gave her bad advice, that she, in fact, she was going to necessarily be kicked out of the country. And the attorney said that that wasn't the case. Thank you, counsel. The case here will be submitted.
judges: Dorsey, Reinhardt, Clifton